UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTOPHER BURRIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO:  1:21-cv-00186 |
| | ) |
| ST. VINCENT ANDERSON REGIONAL | ) |
| HOSPITAL, INC. | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff, Christopher Burris, (hereinafter "Mr. Burris"), by counsel, pursuant to Fed. R. Civ. P. 3, and files his Complaint against Defendant, St. Vincent Anderson Regional Hospital, and shows the Court the following:

**JURISDICTION AND VENUE**

1. This suit is brought and jurisdiction lies pursuant to §28 U.S.C. § 451, 1331, 1337, 1343 and 1345. This is an action authorized and instituted pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq., Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), 42 U.S.C. § 1981 and 42 U.S.C. § 1983, and Retaliatory Discharge for exercising a statutorily conferred right pursuant to *Frampton v. Central Indiana* Gas Co., 260 Ind. 249, 297 N.E.2d 425 (1973) and under covered employer as the term is defined in 29 C.F.R. 825.104 (FMLA).

2. The employment practices alleged to be unlawful were and are now being committed within the jurisdiction of the United States District Court for the Southern District of

Indiana, Indianapolis Division. Therefore, venue is proper within this District and Division pursuant to 42 U.S.C. § 12117(a) and 28 U.S.C. §1391.

3. This Court has Supplemental jurisdiction over the state law claims alleged in this Complaint, pursuant to the Judicial Improvements Act of 1990, 28 U.S.C. 1367. Jurisdiction is proper as the state law claims arise out of the same transaction or occurrence that is the subject matter of the federal claims in this Complaint. Accordingly, justice and judicial economy require that this Court assert supplemental jurisdiction over the state law matters alleged in this Complaint.

## PARTIES

4. The Plaintiff, Mr. Burris, is a male citizen of the United States, and is a qualified employee as defined in Section 701(f) of Title VII.

5. Defendant is a qualified employer as the term is defined in Section 701(f) of Title VII.

6. Defendant is a domestic nonprofit corporation registered with the Indiana Secretary of State.

## ADMINISTRATIVE PROCEDURES

7. On or about August 26, 2020, Mr. Burris filed timely charges of Disability Discrimination in violation of the ADA, and Retaliation for asserting his rights under Indiana's Worker's Compensation laws against Defendant with the Equal Employment Opportunity Commission ("EEOC"), Charge Number 470-2021-00078.

8. On or about October 26, 2020, Mr. Burris received a Notice of Right to Sue from the EEOC for Charge Number 470-2021-00078, entitling him to commence action within ninety

(90) days of his receipt of the Notice. A copy of the Notice is attached hereto and incorporated herein by reference as **Exhibit "A".**

9. The Complaint in this matter was filed within ninety (90) days of receipt of the above referenced Notice of Right to Sue from the EEOC.

## FACTS

10. The Defendant hired Mr. Burris in 2013 as a Security Guard.

11. Throughout his employment with Defendant, Mr. Burris met or exceeded Defendant's legitimate expectations of performance.

12. On or about July 26, 2018, Mr. Burris sustained an injury at work.

13. While trying to restrain a patient, Mr. Burris suffered a torn rotator cuff and a torn bicep muscle.

14. Mr. Burris followed proper company procedure and initially went to the Emergency Department to receive treatment for his injuries.

15. The following day he went to Defendant's Immediate Care location and received a referral to an orthopedic surgeon.

16. On or about September 4, 2018, Mr. Burris went to see Dr. Kay with Central Indiana Orthopedics who diagnosed him with a torn rotator cuff and a fully torn bicep muscle on his right arm.

17. Dr. Kay told Mr. Burris that he would not be able to repair the torn bicep, but that a surgery on his torn rotator cuff would be beneficial.

18. On or about December 11, 2018, Mr. Burris underwent surgery to repair his right torn rotator cuff.

19. Dr. Kay gave an estimated recovery time as four (4) or five (5) months.

20. Mr. Burris had medical restrictions which provided he not use his right arm at all.

21. Mr. Burris applied for Workers' Compensation as well as FMLA after his surgery.

22. After Mr. Burris's first follow-up appointment, he was still not allowed to use his right arm.

23. The following day he received a call from Ms. Whitaker stating that he needed to get another appointment earlier then his next one which was scheduled a month out to get his restrictions lifted.

24. He explained that he was getting physical therapy and that he should have his restrictions lifted a bit after his next monthly appointment.

25. A few weeks later, on February 13, 2019, Ms. Whitaker again contacted Mr. Burris and informed him that a light duty position had become available and that he would need to report to work the next day.

26. Mr. Burris explained that because his injury occurred to his right arm, and he was right hand dominate, he would have a hard time driving his manual vehicle.

27. He would need to make arrangements for transportation and would be unable to work until the following Monday, February 18, 2019.

28. After some pushback he was able to get his back to work date approved for February 18, 2019.

29. Mr. Burris went back to work on February 18, 2019, despite him being in pain.

30. On February 20, 2019, Mr. Burris received lightened restrictions of no lifting, push/pull over 1 lbs. and no repetitive overhead activity.

31. On March 6, 2019, Mr. Burris received both a call and email regarding his transitional duty period and that it was going to expire on April 2, 2019, and at that time he would be placed on Workers' Compensation Leave of Absence.

32. On March 20, 2019, Mr. Burris had his monthly follow-up with Dr. Kay and his restrictions were modified with all restrictions remaining except the weight limit was raised to 5lb.

33. On March 29, 2019, still intending to be placed on leave on April 2, 2019, Mr. Burris received an email stating that his transitional work period would be extended.

34. One of the reasons given for this extension was that he would be off restrictions soon and that it made more sense to allow him to continue working.

35. On April 17, 2019, Mr. Burris attended his follow-up appointment where he was told his treatment had reached maximum treatment for his right shoulder and that he would continue physical therapy for the pain he still had in his bicep.

36. His restrictions were not modified or lifted.

37. Mr. Burris continued working his light duty job until his final appointment on May 15, 2019.

38. At this appointment, Dr. Kay informed him that he had reached maximum treatment for both his shoulder and bicep and he placed him on a permanent 5lb. lifting restriction.

39. After his appointment, Mr. Burris was advised by the Security Manager that he would not be able to return to his position as a Security Guard due to his permanent restrictions.

40. He was contacted by Sedgwick, the Workers' Compensation Insurance Provider, advising him that since he had reached maximum treatment his case would be closed and he would receive a settlement.

41. On May 21, 2019, Mr. Burris received a call from Kellie Harris, Ascension Human Resources Partner in which she let him know that he had thirty (30) days to find another position which he could work in with his restrictions but that he could remain in his current position for thirty (30) days until he would be terminated if he had not obtained a different position.

42. Then, less than ten (10) days later, and much less than thirty (30) days, he received a certified letter dated May 23, 2019, which indicated he would be terminated on May 29, 2019, unless he was placed in a different position.

43. From the time that Mr. Burris received the letter until his last day on May 28, 2019, he was only contacted in order to see if he was able to locate a position despite the fact that HR was also supposed to assist him with his search.

44. At no point did HR assist Mr. Burris in finding a position.

45. At no time did they ask Mr. Burris what his qualifications were and what positions he could work in.

46. Defendant discriminated against Mr. Burris due to his disability.

47. The Defendant retaliated against Mr. Burris due to his workers' compensation claim.

48. The Defendant terminated Mr. Burris in retaliation for his workers' compensation claim.

49. The Defendant retaliated against Mr. Burris for exercising his legal right to take leave under FMLA.

## COUNT I

## DISCRIMINATION ON THE BASIS OF A DISABILITY

50. Mr. Burris hereby incorporates by reference paragraphs 1 through 49 as though previously set out herein.

51. At all times relevant to this action, Mr. Burris was a "qualified individual with a disability" as that term is defined by 42 U.S.C. §12102 and 12111.

52. The conduct as described hereinabove constitutes discrimination based on Mr. Burris's disability.

53. The Defendant willfully and intentionally failed to accommodate Mr. Burris's disability.

54. Defendant intentionally and willfully discriminated against Mr. Burris because he is disabled and/or because Mr. Burris has a record of being disabled and/or because Defendant regarded Mr. Burris as disabled. Similarly situated non-disabled employees were treated more favorably in the terms of privileges, and conditions of their employment.

55. Defendant's actions were intentional, willful and in reckless disregard of Mr. Burris's rights as protected by the ADA and Title VII.

56. Mr. Burris has suffered emotional and economic damages as a result of Defendant's unlawful actions.

## COUNT II

## RETALIATION FOR SEEKING WORKER'S COMPENSATION BENEFITS

57. Mr. Burris hereby incorporates by reference paragraphs 1 through 56 as though previously set out herein.

58. Mr. Burris suffered a work-related injury during his employment with Defendant.

59. The conduct as described hereinabove constitutes retaliation on the basis of Mr. Burris lawfully seeking statutory workers' compensation benefits in violation of the law set forth in *Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 297 N.E.2d 425 (1973).

60. Defendant intentionally and willfully terminated Mr. Burris's employment in retaliation for Mr. Burris's worker's compensation claim.

61. Defendant intentionally and willfully refused to accommodate Mr. Burris's disability caused by his work injury and failed to allow him to return to his employment in retaliation for him seeking him lawful rights under Indiana's Workers' Compensation laws. Similarly situated individuals who were not seeking workers' compensation benefits were treated more favorably in the terms, privileges and conditions of their employment.

62. Defendant's actions were intentional, willful and in reckless disregard of Mr. Burris's rights under Indiana Law.

63. Mr. Burris has suffered emotional and economic damages as a result of Defendant's unlawful actions.

## COUNT II

## RETALIATION FOR TAKING LEAVE UNDER FMLA

64. Mr. Burris hereby incorporates by reference paragraphs 1 through 63 as though previously set out herein.

65. Defendant's termination of Mr. Burris was in violation of his rights under the FMLA.

66. Defendant intentionally tried to interfere with Mr. Burris' right to FMLA.

67. Defendant retaliated against Mr. Burris for his use of benefits under the FMLA.

68. Defendant's actions were intentional, willful, malicious, and done in reckless disregard of Mr. Burris's legal rights under the FMLA.

69. Mr. Burris has suffered economic damages as a result of Defendant's unlawful acts.

70. Mr. Burris has suffered emotional distress damages as a result of Defendant's unlawful acts.

## REQUESTED RELIEF

WHEREFORE, Plaintiff, Mr. Burris, respectfully requests that this Court enter judgment in his favor and:

a. Order Defendant to pay Mr. Burris his lost wages and other economic benefits lost as a result of Defendant's unlawful acts;

b. Reinstatement to the position, salary and seniority level to which he would have been entitled but for the Defendant's unlawful actions, or front pay in lieu of reinstatement;

c. Pay compensatory damages;

d. Pay punitive damages;

  e. Pay liquidated damages;

  f. Pay for lost future wages;

  g. Pay to Mr. Burris all costs and attorney's fees incurred as a result of bringing this action;

  h. Payment of all pre and post judgment interest;

  i. Provide to Mr. Burris all other legal and/or equitable relief this Court sees fit to grant.

## **DEMAND FOR JURY TRIAL**

The Plaintiff, Mr. Burris, by counsel, respectfully requests a jury trial for all issues deemed so triable.

        Respectfully submitted:

        /s/Darron S. Stewart
        Darron S. Stewart #21114-29
        STEWART & STEWART ATTORNEYS
        931 S. Rangeline Rd.
        Carmel IN 46032
        (317) 846-8999
        Fax: (888) 686-6977
        Darron@getstewart.com
        Attorney for Plaintiff, Christopher Burris